**ASSOCIATED ENTERPRISES, INC., and Johnston Fuel Liners, Appellants (Defendants below),**

v.

**TOLTEC WATERSHED IMPROVEMENT DISTRICT, Appellee (Plaintiff below).**

No. 3958.

Supreme Court of Wyoming.

Nov. 22, 1971.

Henry A. Burgess, of Burgess, Kennedy & Davis, Sheridan, for appellants.

Fred W. Phifer, Wheatland, for respondent.

Before McINTYRE, C. J., and PARKER, McEWAN and GRAY, JJ.

McINTYRE, Chief Justice.

Appellants are appealing from a judgment of the district court which authorizes Toltec Watershed Improvement District to enter upon lands of defendant-appellants for the purpose of carrying out foundation studies for a dam site.

The only question presented for our consideration is whether the Wyoming law for the creation of watershed improvement districts (§§ 41–354.1 through 41–354.26, W.S. 1957, 1971 Cum.Supp.) is constitutional. Appellants are contending this law is unconstitutional because it offends the "one man, one vote" concept of equal protection under the Wyoming and United States constitutions.

### Governmental v. Proprietary

We think it will help to understand the problem here involved if we keep in mind the distinction between governmental and proprietary functions of legal subdivisions. In Wyoming we have always recognized such a distinction in dealing with the matter of tort liability of municipal corporations.

Cases which recognize this distinction are so numerous we will not pretend to review them. Instead, we adopt the general statement of rule as set forth in 63 C.J.S. Municipal Corporations § 746, p. 30, in these words:

"* * * the great weight of authority holds * * * that a municipal corporation has a dual character, the one public and the other private, and exercises correspondingly twofold functions and duties, one class consisting of those acts performed by it in the exercise of delegated sovereign powers for the benefit of the people generally, as an arm of the state, enforcing general laws made in pursuance of the general policy of the state, and the other consisting of acts done in the exercise of the power of the municipal corporation for its own benefit, or for the benefit of its citizens alone, or the citizens of the municipal corporation and its immediate locality."

On pages 30 and 32 of the text, it is explained that functions falling in the first class are political and governmental; and that the corporation stands on the same footing with a private corporation in the exercise of functions comprising the second class—that is—in the exercise of purely proprietary functions, or the doing of those things which relate to special or private corporate purposes.

Although the act under consideration does not state that a watershed improvement district is a body corporate and politic, it does set forth that watershed improvement districts are formed as subdistricts of soil and water conservation districts.[1] And, the law pertaining to soil and water conservation districts states that a "conservation district" means a governmental subdivision of the state and a body corporate and politic.[2]

Without reviewing the watershed improvement districts law section by section, we can state categorically that the functions of such districts are proprietary and in the nature of special or private cor-

---

1. Section 41–354.3, W.S.1957, 1971 Cum. Supp.

2. Section 11–235(a), W.S.1957, 1971 Cum. Supp.

poration purposes. The districts do not exercise delegated sovereign powers for the benefit of people generally.

We need to make it clear that we are not saying a watershed improvement district is not a governmental entity. We merely say its functions are primarily proprietary and not governmental.

### Appellants' Burden

■ This brings us to a restatement of the rule long adhered to by this court concerning the burden of proof when it is claimed that a law is unconstitutional. A law will not be construed to be unconstitutional unless its unconstitutionality is clear and beyond reasonable doubt; and the party who assails the validity of a statute has the burden of proving his contention.[3]

■ We repeat and apply the foregoing rule because appellants have cited only cases which involve elections to state office, county office, city office, or offices having to do with education. We need not dispute that the one man, one vote concept of equal protection has been applied to such elections. These elections all have to do with the election of persons to offices where political and governmental functions are extensively exercised.[4]

Typical of the authority relied on by appellants is the case of Avery v. Midland County, Texas, 390 U.S. 474, 88 S.Ct. 1114, 1121, 20 L.Ed.2d 45, where the court made it clear the body involved was a unit of local government "with general governmental powers" over the county's entire area. Also, Gray v. Sanders, 372 U.S. 368, 83

S.Ct. 801, 803, 9 L.Ed.2d 821, which involved a state-wide election. See also Abate v. Mundt, 403 U.S. 182, 91 S.Ct. 1904, 1905, 29 L.Ed.2d 399, which had to do with a county board of supervisors consisting of the supervisors of the county's five towns.

■ Appellants cite no precedent for applying the one man, one vote rule in connection with the establishment and regulation of such entities as watershed improvement districts, soil conservation districts, and irrigation districts, where functions are special and akin to private corporation purposes. We therefore say appellants have failed in their burden of showing that the watershed improvement districts law is unconstitutional.

Moreover, it makes sense not to attempt to apply the one man, one vote concept in the establishment and regulation of districts such as a watershed improvement district. The owners of land within the boundaries of a proposed watershed district are the persons primarily concerned. It is, however, the board of supervisors of the soil conservation district which determines whether a watershed district is needed.' See § 41–354.8, W.S.1957, 1971 Cum.Supp.

In order "to assist the board of supervisors in this determination," a referendum is required; and only the owners of land within the proposed district vote in the referendum. See § 41–354.9, subd. B. The board of supervisors cannot determine that a watershed district is feasible unless a majority of the land owners vote for it *and* unless those voting for the district represent a majority of the acreage contained in the proposed district. See § 41–354.10.

3. Albert v. State, Wyo., 466 P.2d 826, 827, reh. den. 468 P.2d 968; Weiss v. State ex rel. Cardine, Wyo., 455 P.2d 904, 907, cert. den. 398 U.S. 927, 90 S.Ct. 1815, 26 L.Ed.2d 89; City of Rawlins v. Frontier Refining Company, Wyo., 396 P. 2d 740, 744; Kuntz v. Kinne, Wyo., 395 P.2d 286, 288–289; Brinegar v. Clark, Wyo., 371 P.2d 62, 64.

4. No citation of authority is necessary for the proposition that states and municipal corporations perform political and gov-

ernmental functions. Also, education is a matter of purely public concern; and in the establishment and regulation of schools, municipalities act in their governmental and not their private capacity. Sanders v. City of Long Beach, 54 Cal.App.2d 651, 129 P.2d 511; Nabell v. City of Atlanta, 33 Ga.App. 545, 126 S.E. 905; Jones v. City of Amory, 184 Miss. 161, 185 So. 237; Cobb v. City of Malden, C.A.Mass., 202 F.2d 701; and Fulgoni v. Johnston, 302 Mass. 421, 19 N.E.2d 542.

Thus, it can be seen, in matters pertaining to the referendum and affairs of a watershed improvement district, there is a similarity to the manner in which the affairs of a private corporation are administered.

In Mound City Land & Stock Co. v. Miller, 170 Mo. 240, 70 S.W. 721, 727, it was said:

"The fact that each owner is entitled to one vote for every acre of land owned by him creates no more infirmity in the law than the right of each stockholder of any corporation to cast as many votes as he owns shares of stock renders such laws invalid. In both instances the majority in interest, instead of the majority in number, controls; and who shall say such laws are not just?"

For other statements to the same effect, see State ex rel. Harris v. Hanson, 80 Neb. 724, 115 N.W. 294, 298, same result reached on rehearing 80 Neb. 738, 117 N.W. 412, 415–416; 25 Am.Jur.2d Elections § 79, p. 771; and Annotation 82 L.Ed. 259.

We are reminded that § 15.1–338, W.S. 1957, C.1965, provides for protests and petitions pertaining to local improvement districts. If protests are filed by the legal owners of record of more than half of the area, the improvement shall be abandoned. On the other hand, if a petition for the improvement is signed by owners of 50% of the property, then the governing body shall proceed with the improvement.

The principle recognized in § 15.1–338 is not at all unusual. It is not essentially different from the principle on which the watershed improvement districts law is based.

### Overreactions

The writer of this opinion believes there is sometimes a tendency for judges and courts to overreact to decisions of the United States Supreme Court. If we followed the course advocated by counsel for appellants in the instant case, we would be extending holdings of the United States Supreme Court beyond the limits involved in the decisions of that court.

For example, appellants rely heavily upon the case of Hadley v. Junior College Dist. of Metropolitan Kansas City, Missouri, 397 U.S. 50, 90 S.Ct. 791, 25 L.Ed.2d 45, which did extend the one man, one vote rule to local school district elections. That, however, is not to say we should extend the rule even further by applying it to watershed improvement districts.

The limit of the court's holding in the *Hadley* opinion is pointed up by a dissenting opinion of Justice Harlan. At 90 S.Ct. 798, he expresses concern that the court has gone too far in extending the rule and expresses a fear that the rule may even be extended far enough down the scale of governmental bodies to include irrigation districts and air pollution control agencies.

Also, Chief Justice Burger concurred with Justice Harlan and stated, at 90 S.Ct. 802, that the need for more flexibility becomes greater as we proceed down the spectrum from the state legislature to the single-purpose local entity. He lamented the fact that the court had not indicated which nonpopulation interests may or may not be considered by a legislature in devising an apportionment scheme for a local, specialized unit of government.

It is apparent then, from the majority opinion and from the dissents in the *Hadley* decision, that the one man, one vote rule has not been extended to a local, specialized unit of government such as a watershed improvement district. We reject the idea that we should so extend the rule. Accordingly, we fail to find the watershed improvement districts law unconstitutional and we will not disturb the judgment of the district court.

Affirmed.