CITY OF RAWLINS, Wyoming, a municipal corporation, Appellant (Defendant below),

v.

The FRONTIER REFINING COMPANY, a Wyoming corporation, Appellee (Plaintiff below) (two cases).

CITY OF RAWLINS, Wyoming, Mayor, and D. W. Marquith, Chief of Police, Appellants (Defendants below),

v.

V–I OIL COMPANY, Appellee (Plaintiff below).

Nos. 3257, 3259, 3258.

Supreme Court of Wyoming.

Nov. 20, 1964.

Robert Stanley Lowe, Rawlins, Joseph F. Maier, Torrington, for appellants.

Loomis, Lazear, Wilson & Pickett, Frederick G. Loomis, Richard F. Pickett, Cheyenne, for appellee Frontier Refining Co.

Crofts, Mockler & Meier, Frank C. Mockler, Lander, for appellee V-1 Oil Co.

Before PARKER, C. J., and HARNSBERGER, GRAY, and McINTYRE, JJ.

Mr. Chief Justice PARKER delivered the opinion of the court.

The Frontier Refining Company brought two actions against the City of Rawlins, seeking to recover diesel fuel taxes previously levied under the authority of Ordinance 199 and paid under protest. This plaintiff also asked for an injunction against further enforcement of the ordinance. V-1 Oil Company applied for an injunction against the city to prevent the enforcement of Ordinance 199, providing for a license tax against the wholesalers of diesel fuel and Ordinance 171, providing for a like tax upon gasoline wholesalers. Frontier contended that Ordinance 199 was unconstitutional; V-1 charged that the city was without statutory authority to levy these taxes, that they were not uniform, and were confiscatory. The three cases were consolidated for trial, the parties consenting, and the matter heard upon an agreed statement of facts and stipulations. The court made a general finding for the plaintiffs and against the defendants, decreed recovery of the taxes previously paid by Frontier, and made permanent a temporary injunction previously entered in favor of V-1.

Although other questions are urged in the appeal, the fundamental issue here is the validity of the ordinances under c. 100, S.L. of Wyoming, 1961, a codification and general revision of laws relating to powers of cities and towns, which chapter omitted from the title the words, "For the purpose of raising revenue," previously contained in § 15–7, W.S.1957, and the phrase, "to raise revenue," previously contained in § 15–100, W.S.1957. Section 15–7 was passed as c. 150, S.L. of Wyoming, 1909, the title of which read, "An Act to create revenue for municipal purposes by levying and collecting a license tax on any business * * *" and was not changed until c. 100, S.L. of Wyoming, 1961, the title of which read, "An Act providing for the codification and general revision of laws relating to powers of Cities and Towns as set forth in * * *; and to repeal Sections 15–5 to 15–7 inclusive; * * * 15–86 to 15–126 inclusive; * * Wyoming Statutes, 1957, relating to the powers of Cities and Towns."

Appellees urge the significance of the omission from subsection (12), § 2, c. 100 (§ 15–4.2(12), W.S.1957 (1963 Cumulative Supp.)), of the words "For the purpose of raising revenue," saying that this subsection replaced §§ 15–7 and 15–100. Such argument must be considered in the light of the present wording of subsection (12) and the fact that other portions of the new law also relate to the matter in issue.

The relevant portions of the Act read:

"Section 2.[Powers]. The cities and towns shall have the following powers which may be exercised by their governing bodies:

* * * * * *

"(10) To * * * open, * * * improve * * * and care for any street, avenue, alley or land * * *.

* * * * * *

"(12) To license, tax and regulate any business whatsoever conducted, carried on or trafficked in within the limits of such city or town; provided, however, that all license taxes shall be uniform in respect to the class of business upon which imposed."

■ Although the trial court at the instance of V-1 and with the consent of the parties removed from the judgment by a nunc pro tunc order the statement that the court "considered the issues made upon the question of constitutionality of the ordinances of defendant," the constitutional questions were determined by the general

findings of the court and are here presented. Wallis v. Nauman, 61 Wyo. 231, 157 P.2d 285.

Defendants in the appeals insist that Ordinance 199 complies with Art. 13, § 3, Wyo.Const.,[1] insofar as the phrase "in pursuance of law" is concerned, and that the noted omission in § 15–4.2(12) is not fatal. They submit first that according to definition in Black's Law Dictionary, p. 1703 (3 ed.), "tax" means "To impose a tax; to enact or declare that a pecuniary contribution shall be made by the persons liable, for the support of government." Defendants refer also to the same authority at p. 1707 and pp. 1280–1281, which defines, respectively, "taxation" and "occupation tax." Cases cited by defendants include State v. Board of Com'rs of Laramie County, 8 Wyo. 104, 55 P. 451, where the court said there was no significant change when the legislature in an amendment and re-enactment of a taxation statute changed the phrase "[F]or county revenue, for ordinary county expenses, not more than * * * mills on the dollar" to "For County revenue for all purposes there shall be levied annually a tax, but * * * shall not exceed * * * mills on the dollar." Another discussed is In re Metcalf's Estate, 41 Wyo. 36, 282 P. 27, 32, where the court noted that any presumption of a change of intention from a change of language is of little weight when there is a revision of a whole law rather than an amendment and quoted Lewis' Sutherland, Statutory Construction, p. 931 (2 ed.), " 'It is presumed, in the construction of general words or dubious provisions, that there is no intention to depart from any established policy of the law.' " Attention is also directed to City of Cheyenne v. O'Connell, 6 Wyo. 491, 46 P. 1088, interpreting the charter of the City of Cheyenne, which empowered the city council to "levy and collect taxes" on various occupations, and holding that the charter

provision authorized the city to levy an occupation tax. Reliance is placed on the case of Abraham v. City of Roseburg, 55 Or. 359, 105 P. 401, where in interpreting a statute authorizing the city to "license and regulate" it was held that these words carried with them the power to tax for revenue purposes. In this connection, we call attention to the circumstance that the decision is based principally upon the statute's provision allowing the licensing of such employments as "the public good may require to be licensed," which would seem to weaken the holding as regards the point here urged. Defendants cite McCarthy v. City of Tucson, 26 Ariz. 311, 225 P. 329, wherein the court interpreted a charter empowering the council "to license and regulate * * * [businesses and] to fix the rates of license tax" as including the right to impose a license tax for revenue. It is of some significance that the Arizona court there said, 225 P. at 331:

> " * * * It may be doubtful whether the words 'to license and regulate' include the power to impose a license tax for revenue only. In fact, the weight of authority seems to be that they do not. But this is not true where, in addition to them, the word 'tax' occurs, for 'a license fee may be imposed either for regulation or for revenue, where the city has the power to license, regulate and tax' * * * ."

Defendants rely upon City of Glendale v. Betty, 45 Ariz. 327, 43 P.2d 206, emphasizing the court's upholding a Glendale ordinance which imposed a tax for revenue on certain businesses under the authority of a statute permitting cities of that class "to license, tax and regulate * * * [businesses]," substantially the same as the statute here under discussion.

Plaintiff V-1 in it principal challenge centers upon the view that the 1961 legisla-

1. "The legislature shall restrict the powers of such [municipal] corporations to levy taxes and assessments, to borrow money and contract debts so as to prevent the abuse of such power, and no tax or assessment shall be levied or collected or debts contracted by municipal corporations except in pursuance of law for public purposes specified by law."

ture had a purpose in omitting the crucial words "For the purpose of raising revenue" and says its intent was definite to remove the power of the cities to license, tax, and regulate businesses *for revenue purposes.* In pursuing this thesis, counsel discusses the legislative history of c. 100 as it is reflected in the record, and seeks additionally to fortify such position by the fact that an effort in the next session of the legislature to restore the words "For the purpose of raising revenue" failed of passage. That plaintiff submits no authority tending to uphold its assumption that the intention of a subsequent legislative body can have any effect upon the intent of a previous legislature. There are presented numerous cases holding that a succeeding legislature by a refusal to amend has indicated a clear intent to continue an act as it previously existed and that courts should take this into consideration in construing any provision of an act which is doubtful,[2] but such general principle is not controverted by opposing counsel, and it does not affect the basic question as to the effect of the words "To license, tax and regulate" (§ 15–4.2(12)) as fulfilling the mentioned requirements of the constitution.

Plaintiff Frontier does not address itself in quite the same fashion to the invalidity of the ordinance. However, its main thesis is the same, that in order for the city's levy of an occupation tax to have been legal it must have been specifically authorized by a State statute and that c. 100 did not accomplish this. Frontier calls attention to Kelsey v. Taft, 72 Wyo. 210, 263 P.2d 135, 136, wherein it was said, "It is elementary that taxation is a legislative function and that taxes may be impressed, levied, assessed and collected only under the statutory authority and in the manner provided by law." It refers to Western Auto Transports, Inc., v. City of Cheyenne, 57 Wyo. 351, 118 P.2d 761, 120 P.2d 590, 596, where the court quotes from 3 McQuillin, Municipal Corporations, p. 451 (2 ed.), " 'the power to tax and license as a means of raising revenue is not inherent in municipal corporations, it follows that such power must be expressly conferred in plain terms, or it must arise by necessary implication from powers expressly granted.' " Frontier also points out City of Sheridan v. Litman, 32 Wyo. 14, 228 P. 628, 630, where the court said, "It is conceded that the 'license tax,' as authorized by the statute and imposed by the ordinance, is purely for revenue purposes. The right to exact the tax depends on the power of the city to tax occupations," observing that the statute governing the case began with the words, "For the purpose of raising revenue." Some authorities are cited to show a distinction between an occupation and license tax, which point has not been contested. The principal reliance of Frontier seems to be upon the holding in State ex rel. Sampson v. City of Sheridan, 25 Wyo. 347, 170 P. 1, 2–3, 1 A.L.R. 955, that appellant quoting the following passage:

" * * * The statute relied on in this case to give the power (section 1681, Comp.Stat. supra [later § 15–100, W.S. 1957]) specifically gives the double power to tax and regulate many businesses and occupations, but does not specifically mention the vocation or occupation, the subject of the ordinance under consideration, but it is claimed to be covered by the general clause contained in the section, viz:

" 'To raise revenue by levying and collecting a license tax on any business,

2. Authorities cited on this and peripheral aspects include: 82 C.J.S. Statutes § 360, pp. 790–791; Safeway Stores, Inc., v. Bowles, Em.App., 145 F.2d 836 (certiorari denied 324 U.S. 847, 65 S.Ct. 683, 684, 89 L.Ed. 1408); People's Gas Light & Coke Co. v. Ames, 359 Ill. 152, 194 N.E. 260; Wright v. J. A. Tobin Con-struction Company, Mo.App., 365 S.W.2d 742; State v. Chicago & N. W. Ry. Co., 147 Neb. 970, 25 N.W.2d 824; American Bridge Co. v. Smith, 352 Mo. 616, 179 S.W.2d 12, 157 A.L.R. 798 (certiorari denied 323 U.S. 712, 65 S.Ct. 37, 89 L.Ed. 573).

or calling, or any corporation, and regulate the same by ordinance.'

"It is evident that the primary object of this clause is to give the power to tax for revenue occupations and callings, and the regulation is only incidental to the taxing power conferred * * *."

From this, counsel assume us to have recognized that in order for a city to levy an occupation tax for revenue purposes the statute must specifically state in so many words that the purpose is to raise revenue and that the use of the words "regulate, license and tax" or just "tax" do not in themselves authorize an occupation tax as appellant contends. We think that Frontier's conclusion is unjustified by the decision since the issue there was whether under the provision, "[cities] shall have power * * * to raise revenue by levying and collecting a license tax on any business * * * and regulate the same by ordinance," Sheridan was given power to enact *police regulations*. The court's finding that the primary object of such a clause was to give power to tax for revenue occupations sheds little light upon the requisite determination here, Does an ordinance passed under the authority to "license, tax and regulate" a business meet the constitutional requirement that no tax be levied except in pursuance of law?

Some discussion is presented by the defendant urging that the challenged ordinances were "for public purposes specified by law" as provided in Art. 13, § 3, since the ordinances themselves provided that they were for the purpose of raising revenue for maintenance and repair of public streets and alleys, which § 15–4.2(10), W.S. 1957 (1963 Cumulative Supp.), authorized. The plaintiffs do not directly challenge this point.

■ Our analysis of the litigants' arguments and submitted authorities concerning the question of whether or not the ordinances were enacted in pursuance of law as required by Art. 13, § 3 (or stated as V-1 puts it, the ordinances are invalid because c. 100, S.L. of Wyoming, 1961, removed the power of cities and towns to license, tax, and regulate businesses for revenue purposes), leads us to the following conclusion: The phrase "For the purpose of raising revenue," a part of § 15–7, while perhaps desirable does not constitute the only words which convey with reasonable certainty the purpose of the Act and the intent of the legislature. The holdings of the mentioned Arizona cases on problems substantially similar to that before us are that the words "license, tax and regulate" are sufficient to authorize cities and towns to impose license taxes for revenue. The case of Cheyenne v. O'Connell, supra, while not on an identical situation, is to a similar effect. We hold, therefore, that Ordinances 171 and 199 of the City of Rawlins are not violative of Art. 13, § 3, and that the existing statute sufficiently states the authority for a city to pass an ordinance levying an occupation tax.

The defendants insist that Art. 15, § 13, Wyo.Const.,[3] was not violated, arguing:

First, that the tax was levied in pursuance of law;

Second, that the ordinance clearly states the object of the tax; and

Third, that such constitutional provision does not apply to excise taxes such as the occupation tax here sought to be levied.

■ As we have already indicated, the existing statute sufficiently states the authority for a city to pass such ordinances. Since this is the only point here argued by plaintiffs, and it is their burden to show all claimed unconstitutionality, In re Trent's Claim, 68 Wyo. 146, 231 P.2d 180, it becomes unnecessary to discuss ·the other matters presented by defendants.

■ In addition to its contention that the ordinances were invalid as being un-

3. "No' tax shall be levied, except in pursuance of law, and every law imposing a tax shall state distinctly the object of the same, to which only it shall be applied."

authorized by statute, plaintiff V-1 argues that the taxes thus imposed by the city were invalid because they were not uniform in respect to the class of business on which imposition was made. It maintains that there is a discrimination which does not rest on a reasonable ground or difference between the persons included and those excluded from the application of the ordinances. Perhaps the point urged can best be visualized by setting forth § 5(c) of Ordinance 171, which for all practical purposes is identical to the corresponding section in Ordinance 199:

> "[The occupation license tax of one cent per gallon levied by § 4 of this ordinance shall not be paid upon any gasoline sold, delivered, or supplied by a wholesaler] to any person engaged in the business of transporting persons or property from terminals within the City of Rawlins to points outside of the city *upon deliveries of gasoline in quantities of 1,000 gallons or more at any one time* into tanks owned or leased by such person and located within the corporate limits of the City of Rawlins, provided that this exemption shall not apply unless the person receiving the gasoline certified in in writing to the wholesaler that such gasoline will be used only in motor vehicles *engaged in the business of transporting persons and property from terminals in within the City of Rawlins to points outside of the city,* and will not be used in private motor vehicles or vehicles engaged in business wholly or in part within the City

of Rawlins." (Emphasis supplied to highlight V-1's argument.)

It is asserted that few and probably only one person or firm could qualify to allow a wholesaler an exemption under the ordinance. V-1 cites City of Bessemer v. Bessemer Theatres, Inc., 252 Ala. 117, 39 So.2d 658, and People ex rel. Village of Lawrence v. Kraushaar, 195 Misc. 487, 89 N.Y.S.2d 685, as authority for the rule that an ordinance imposing a license must be uniform in respect to the class of business upon which the taxes are imposed, and these authorities are not contested by defendants, who answer instead that the city by the exemption in § 5(c) was merely trying to avoid any invalidity which would occur if the municipality attempted to levy the license tax upon interstate carriers or businesses not carried on within the jurisdiction of the municipality. In this regard, defendants cite Western Auto Transports, Inc., v. City of Cheyenne, 57 Wyo. 351, 118 P.2d 761, 120 P.2d 590. It is also pointed out that a constitutional requirement of uniformity is met when a classification is reasonable, Ludwig v. Harston, 65 Wyo. 134, 197 P.2d 252; and it is asserted that here no more reasonable distinction could have been made than an allowance of the exemption from the occupation tax of businesses which were outside the jurisdiction of the city. The point of defendants is well taken, and in our view V-1 fails to show lack of uniformity on the mentioned grounds.

 This plaintiff also claims the ordinances to be invalid because their enforcement provisions[4] are unduly severe

---

4. "Section 3. * * * the Chief of Police is hereby authorized, empowered and directed to lock up the tanks or other receptacles of * * * dealer for receiving, storing, or dispensing gasoline [diesel fuel] for sale at wholesale, and to take all other steps necessary to prevent * * * dealer from engaging in, carrying on or conducting the business of wholesaling gasoline [diesel fuel], until * * * dealer's license tax is paid in full."

"Section 8. Any wholesaler failing to pay all or any part of the occupation license tax * * *, shall pay in addition to such tax a penalty of ten per cent, plus interest at the rate of six per cent per annum from the date such tax became due. *· * *"

"Section 10. Violation of any of the provisions of this ordinance shall be a misdemeanor, punishable under conviction by a fine in an amount not to exceed One Hundred Dollars ($100.00), and each

and confiscatory, emphasizing the provision that each day's violation constitutes a separate offense and the authorization for the chief of police to lock up the tanks in case of nonpayment of the license tax, alluding also to the monetary penalties for violation. To substantiate its position, V-1 quotes from Edwards & Browne Coal Co. v. City of Sioux City, 213 Iowa 1027, 240 N.W. 711, and Town of Walkerton v. New York, C. & St. L. R. Co., 215 Ind. 206, 18 N.E.2d 799, both factually and in legal result distinguishable from the case at bar. Those cases enunciate the principle that, when authorized, reasonable penalties may be imposed by ordinances and statutes in order to induce compliance but such excessive penalties as are calculated to intimidate or coerce a party from testing the validity of a requirement may not be exacted.

The defendants reply that the penalties prescribed by §§ 8 and 10 of the ordinances are in accordance with § 15–4.2(37), W.S.1957 (1963 Cumulative Supp.):

"[The cities and towns shall have the following powers which may be exercised by their governing bodies] To pass all ordinances and resolutions, and make all regulations not repugnant to law, necessary for carrying into effect or discharging all powers conferred by this act; to enforce obedience to such ordinances with such fines or penalties as may be deemed proper; provided, that the punishment of any offense shall be by fine in any sum not more than $100, or by imprisonment not to exceed 30 days; or by both such fine and imprisonment."

It is additionally suggested that all penalties could under the provisions of § 9 of the ordinances [5] be avoided by immediate resort to the court. We are impressed with the latter argument. There would seem to be no denial of due process where special proceedings are delineated for the testing of an ordinance. See 16A C.J.S. Constitutional Law § 640; 12 Am.Jur. Constitutional Law § 617. This is especially true where the ordinance itself authorizes payment of a tax under protest, a suit in the county to determine validity, and makes provision for the repayment of the tax with interest in the event of a decision in favor of the licensee. Additionally, it has been held that an ordinance may provide for a penalty for each repetition though the offense is continuous in respect of time. Melton v. City of Paris, 333 Ill. 190, 164 N.E. 218; 5 McQuillin, Municipal Corporations, pp. 376–377 (3 ed.). Even were this court to view the authorization of the chief of police to lock up the tanks of any dealer, until the license tax was paid in full, to be void, it would appear that such portion would be severable, and therefore the ordinances would not be declared void. Father Basil's Lodge, Inc., v. City of Chicago, 393 Ill. 246, 65 N.E.2d 805; Doran v. City of Camden, 64 N.J.L. 666, 46 A. 724. Accordingly, we hold that the penalties prescribed by the ordinances do not render them invalid in toto.

Defendants address themselves to four other questions:

1. The validity of Ordinance 199 under Frontier's contention that the State had preempted the field and that for this reason

---

day of such violation shall constitute a separate offense, punishable by a separate fine."

5. "Any wholesaler, desiring to question the legality of the occupation tax herein imposed, or its application to him under any given circumstances, may pay such tax under protest, and may bring an action against the City of Rawlins in the District Court of Carbon County, to recover back said tax so paid under pro-

test. Either party may appeal from the decision of the District Court of Carbon County to the Supreme Court of the State of Wyoming. If the final decision be in favor of the wholesaler, the City of Rawlins shall repay said tax paid under protest, together with interest thereon at the rate of 6% per annum. Any such action must be brought within thirty (30) days after the tax has been paid under protest, or such action shall be forever barred."

the defendants had no statutory authority to collect the tax on diesel fuel.

2. The right of V-1 to the equitable relief of a temporary injunction when this proceeding was instituted and then the permanent injunction after hearing was held in the case.

3. The constitutionality of the ordinances under the due process provisions of the 14th Amendment of the United States Constitution.

4. The issue raised by defendants' motion to dismiss Frontier Refining Company's Case 3257 because of the alleged failure of plaintiff to comply with the provisions of § 15–29; W.S.1957, relative to filing claims before bringing suit.

The first three of these questions are not sufficiently before the court to require answer. As to the fourth, we are inclined to agree with Frontier that the tax repayment was not in any way a claim against the city which was required to be filed. In fact, § 9 of the ordinances is to the contrary and indicates clearly that the suit which was brought was in accordance with what the city had prescribed. However, this point is moot in view of the fact that the ordinances were valid and the tax properly levied.

The judgment of the trial court is reversed with instructions to enter judgment for defendants in all three cases.

Reversed.